LUIS ARCE, Plaintiff and Appellee, *v.* JUAN PEDRO DÍAZ, Defendant and Appellant.

No. 10831. Argued November 2, 1953.—Decided December 15, 1954.

*Héctor Reichard* for appellant. *José Veray, Jr.* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The facts involved in this case are correctly set forth in the following findings of fact made by the trial judge:

"1.—Plaintiff, Luis Arce, is the owner in fee simple of a rural property of 76.307 cuerdas located at barrio Corrales of Aguadilla, which he acquired by purchase from Ramón Añeses, by deed No. 23, of April 10, 1931, before Notary Augusto Reichard del Valle and which is described as follows:

'RURAL: at barrio Corrales of this Municipality, measuring 76.307 cuerdas, equivalent to 29 hectares, 99 ares and 17 centiares of land, bounded on the North by José Pío González separated by a dirt road; on the East, by Alejandro Alvarez; on the South, by the highway leading from Aguadilla to Isabela and on the West, by Telesforo Cabán, Juan Pedro Díaz, Galo Rivera and Juan Pedro Díaz. Recorded at page 123 of vol. 72 of Aguadilla, property No. 3534, first entry.'

"2.—The defendant, Juan Pedro Díaz, is the owner of parcel "C" which forms part of a property of a greater area, described as follows:

'RURAL: located at barrio Corrales of Aguadilla, measuring 75.102 cuerdas, equivalent to 29 hectares, 24 ares and 61 centiares of land, bounded on the North by the Heirs of Cabán; on the East by Luis Arce; on the South by highway No. 2 and on the West by Onofre López, Heirs of Domingo Ducós, María Cáceres de Gerena and Heirs of Cabán. Recorded at page 247 of vol. 85 of Aguadilla, property No. 4298.'

"3.—That plaintiff's property is bounded on the South by the insular highway leading from Aguadilla to Isabela and measures 232.88 meters along its southern boundary, starting from a guava tree on the southeast side in a straight line to a stone located on the southwestern side; on the western boundary starting in straight line from a stone to a *jobo* tree it measures 1046.27 meters and from the *jobo* tree in a straight line to an *almácigo* tree it measures 70.63 meters; on the eastern boundary, starting in a straight line from a guava tree to a concrete piece, it measures 977 meters, and on the northern boundary, in a straight line from a concrete to a *tártago* tree, it measures 244.51 meters and from the *tártago* to an *almácigo* in a straight line it measures 18.93 meters.

"4.—That on June 12, 1948 civil engineer Simón Amador Amador prepared a survey plan of the properties of Luis Arce and Juan Pedro Díaz; that in order to prepare that plan he examined the plan of the original property owned by Ramón Añeses, located at barrio Corrales of Aguadilla; that the plan refers to the portion of the property owned now by Luis Arce; that it was made on the date appearing thereon, that is, on December 18, 1922, by the surveyor R. Jiménez Soto; that according to that plan the western boundary of Luis Arce's property is straight; that on the southern boundary, at the highway, it is also straight, that the landmarks on the southern boundary are a *jobo* tree and a stone; that from the *jobo* tree to the stone there is a distance of 410.88 meters; that the property to which Luis Arce's plan refers has an area of 76.307 *cuerdas;* that the plan was made on April 16, 1931 by the surveyor R. Jiménez Soto; that the southern boundary of the 76 cuerdas property owned by Luis Arce extends from a guava tree to a stone; that the distance between those two points along that boundary is 232.88 meters; that the plan of the main property along the southern boundary shows a distance of 410.88 meters; that in making the survey the witness reached the conclusion that the southern boundary of Luis Arce's prop-

erty measures that same distance because in preparing the survey he took as his starting point the *jobo* tree, and measured 178 meters, which is the difference between 410.88 and 232.88 meters, in order to locate the point where the guava tree was supposed to stand; that from that point he continued to measure the land until completing the total of 410.88 meters and placed a landmark there, which coincided with the point where the stone was supposed to stand; that he then noticed that the stone was 5.20 meters within Luis Arce's property; that upon marking the western boundary of Luis Arce's property he learned that the dividing line between both properties, that of Mr. Arce and that of Mr. Díaz, does not run in a straight line but goes into the property of Luis Arce at some points and at others into the property of Juan Pedro Díaz; that the portion of the boundary line which goes into Luis Arce's property measures 3.19 cuerdas, all located at barrio Corrales of Aguadilla, and it is divided into three parcels: parcel A consisting of .53 cuerdas, bounded on the North and West by Juan Pedro Díaz; on the South by the insular highway and on the East by Luis Arce; parcel B of .16 cuerdas is bounded on the North, South and West by Juan Pedro Díaz and on the East, by Luis Arce; and parcel C of 2.66 cuerdas is bounded on the North at present by the Puerto Rico Land Authority; on the West by Juan Pedro Díaz and on the South and East, by Luis Arce; parcels A of .53 cuerdas and parcel C of 2.66 cuerdas are owned by plaintiff Luis Arce and parcel B of .16 cuerdas belongs to Juan Pedro Díaz; that this being the case, it so happens that a parcel of 3.03 cuerdas belonging to Luis Arce is in the possession of the defendant Juan Pedro Díaz; that said portion of land belonging to Luis Arce is the one being possessed by Juan Pedro Díaz, and that the portion of 3.03 cuerdas is worth three or four hundred dollars and that defendant has been in its illegal possession without title and against the will of the plaintiff, since 1934 to 1935 approximately."

The only error assigned by the defendant and appellant is directed against the correctness of the findings of facts set forth by the trial judge in his untrammeled weighing of the evidence. We have canvassed the whole evidence, particularly the documentary, and we are convinced that the plan prepared by civil engineer Simón Amador y Amador

on June 12, 1948, and which was made by mutual consent of both parties, represents the true factual situation as to the controversy over the western boundary of Luis Arce's property and the adjoining eastern boundary of Juan Pedro Díaz's property. Defendant and appellant attempts to convince us that said plan is not binding on him. Assuming, without deciding, that a plan is not binding on one of the parties who has ordered it together with the other party involved in a controversy like the one herein, it at least constitutes part of the evidence which a court may use in restoring the true limits of the boundaries of several tenements which have already been demarcated.

The action for survey is entirely different from the action of revendication. The action for survey "is granted to all owners whose adjoining properties have confusing boundaries because of natural causes, fortuitous accidents or the voluntary acts of a third party, all of whom must appear at a single suit; and it is also an action which never prescribes in the sense that any of the owners may at any time request that the confusion of boundaries cease... Said action is certainly very different from the action of revendication which is subsidiary and arises when the boundaries of several adjoining tenements *are already demarcated*, or when as a result thereof, there is need to revendicate lands alleged to have been usurped:" 3 Manresa, *Comentarios al Código Civil Español* 305, (6th ed. corrected and enlarged, Editorial Reus, S. A.) (1934).

Undoubtedly, the instant case dealt with tenements whose boundaries were already demarcated. In the first place, the drawing prepared by surveyor Jiménez Soto, on December 18, 1922 (Exhibit 1 of plaintiff) of Ramón Añeses' property, from which the property owned at present by plaintiff-appellee, Luis Arce, was segregated, was introduced in evidence; in the second place, the one prepared by surveyor Juan Elías Cerezo on December 10, 1923 (Exhibit 1 of defendant) of

the property of defendant-appellant Juan Pedro Díaz, which had been purchased from Santiago Arce was likewise introduced in evidence; in the third place, the drawings ordered by agreement of the parties, prepared by engineer Simón Amador y Amador on June 12, 1948 (Exhibit 3 of the plaintiff) was also introduced in evidence. This being the case, the action for survey would not have been justified. The proper action for settling the possible usurpation of lands previously demarcated was the action of revendication which requires different proof, as Manresa tells us in the following paragraphs:

"The action of revendication—we were saying—is broader: the owner thereby claims his property from the person who has it or possesses it. Hence the exercise of this action calls for very complex requirements and demands. So far, since it is granted only to the owner of the thing, in order that he may avail himself of it he must necessarily prove that he possesses it as owner; his obligation to establish ownership is only altered when the defendant argues, not against plaintiffs' title, but on the ground of subsequent title, which he must prove.

"Now then: what must the owner produce and prove as such owner for his action to prosper? The following, briefly summarized:

"1. He must mark, define and identify correctly the thing sought to be revendicated. Thus, in the case of immovables, it is a well-settled rule that the location, area and boundaries of the property must be accurately specified, and during the course of the trial it must be proved that the piece of land claimed is the one mentioned in the documents, titles and other means of proof on which the plaintiff bases his claim, and that inasmuch as the question of identity is merely one of fact, the findings of the trial court may be reviewed on appeal.

"2. He must show his just dominion title and prove it.

"The performance of this last obligation involves such an array of intricate cases, to determine title as well as to regulate the development and outcome of the action, that it must be decided having in mind the very jurisprudence of the Supreme Court, the law of Civil Procedure and the Mortgage Law." 3 Manresa 138, *supra*.

The conflict existing between the plan prepared by the surveyor, Mr. Jiménez Soto, in 1922 and the plan prepared by the surveyor, Mr. Juan Elías Cerezo, in 1923 is evident: in the first, the western boundary of plaintiff-appellee's property runs in a straight line, in the second in a curved line. The third plan prepared by the engineer appointed by mutual agreement of the parties ratifies the first plan, which is the one favoring plaintiff-appellee. This third plan, drawn by a civil engineer, from the strict point of view of experience, must be superior to the other two plans, (1) because a person chosen by mutual agreement of the parties is to be presumed more impartial; (2) because his professional capacity is greater.

This last plan points out the fact that point 12, that is, the stone which served as a landmark, was 5.20 meters within plaintiff-appellee's property, and confirms it again by comparing the landmarks of the former plans. Furthermore, the dirt road on which defendant-appellant bases the irregularity of the commencement of the western boundary, starting from the southern part of plaintiff-appellee's property, is outside the perimeter of the property and therefore, the topographic version of the plan prepared by Mr. Jiménez Soto in 1922 is ratified. The rest of the oral evidence is conflicting on this point. The trial judge gave credit to plaintiff-appellant's evidence, and said statement of facts is the most consistent with the expert documentary evidence, which the trial judge had before him.

Inasmuch as the thing sought to be revendicated was properly identified, and inasmuch as the dominion title over the thing was proved, the correctness of the judgment is too evident for us to disturb it.

The judgment will be affirmed.